## PROSECUTION FOR ILLEGAL PRACTICE OF MEDICINE.

Circuit Court of Summit County.

LYMAN D. TRIPLETT v. STATE OF OHIO; AND ORA L. BROWN v. STATE OF OHIO.

Decided, October 12, 1912.

*Constitutional Law—Evidence—Indictments—Laws Regulating Examination and Registration of Medical Practitioners Constitutional —Chiropractic and Magnetic Healing Practice of Medicine—Evidence of Training Not Admissible in Prosecution for Violation of Laws Requiring Examination and Registration of Medical Practitioners—Indictment, When Not Bad for Duplicity.*

1. Sections 1286, 1287 and 12694, Ohio General Code, relating to the appointment and powers of the state board of health and the state board of medical examination and registration, and providing for examination and registration of those practicing medicine, are a proper exercise of the police power and are constitutional.

2. Advertising to cure by chiropractic treatment, or by magnetic healing, or taking fees for treatments under those systems, is practicing medicine within the meaning of the statutes requiring examination and registration of medical practitioners.

3. In a prosecution for violating the statutes regulating the practice of medicine, testimony on behalf of the accused, relating to the course of study which he pursued in preparation for his profession and that his treatments did not consist of administering drugs or performing surgical operations, is not admissible.

4. Where a statute declares the doing of any one of several things to be practicing medicine, an indictment which charges the accused with having done all of them is not bad, and he may be found guilty, if the evidence at the trial establishes the fact that he did any one of them.

*W. J. Laub, L. D. Slusser* and *H. M. Hagelbarger*, for plaintiffs in error.

*F. J. Rockwell*, contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

These two cases are considered together because they both involve convictions for violating the statutes regulating the

practice of medicine and have many propositions in common. The constitutionality of the law under which the accused were convicted is attacked in both cases.

Neither of the accused held a certificate obtained from the state medical board in the manner required by law.

Lyman D. Triplett was tried by the Probate Court of Summit County upon an affidavit filed with it specifying that he had used the title "Prof." in connection with his name upon cards with which he advertised that he was a "Class School Graduate of the Weltmer School of Suggestive Therapeutics (Magnetic Healing)." "Every Known Disease Cured Without Medicine or Surgery. Office Treatment. Home Treatment. Absent Treatment. Thousands Cured via this *Drugless* Route." That he, for a fee, examined and diagnosed a certain bodily infirmity or disease of one Louise Zimmerly as hardening of the arteries and, for a fee, prescribed, advised, recommendd and administered a certain application, agency, operation and treatment to affiant unknown, for the relief of said bodily infirmity or disease.

Ora L. Brown was tried by the Common Pleas Court of Summit County upon an indictment specifying that he had used the letters "D. C.," being an abbreviation of and meaning Doctor of Chiropractice, in connection with his name, thereby representing that he was engaged in the practice of medicine and surgery for the cure, relief and treatment of bodily infirmities and diseases; that he, for a fee, examined and diagnosed a certain bodily infirmity or disease of one Jacob A. Kepler, as partial paralysis and, for a fee, prescribed, advised, recommended and administered a certain application, agency, operation and treatment, the name of which is chiropractic adjustment, and the nature of which is a manipulation or pretended adjustment of the vertebrae of the spinal cord, for the relief of said bodily infirmity or disease.

The sections of the General Code upon which the prosecution of these cases were based are 1286, 1287 and 12694.

These sections are derived from the act of May 9, 1908 (99 O. L., 492), revising and consolidating the laws relating to the appointment, powers and duties of the state board of health, the state board of medical registration and examination, etc.

Said act contains former acts regulating the practice of medicine, and amendments thereof, which have been passed upon by the Supreme Court of this state, their constitutionality being upheld.

There is nothing new in the sections of the General Code referring to the practice of medicine which has not been settled by the decisions of this state, so that it may be said that their constitutionality is no longer an open question

The following quotations from the leading Ohio cases on the subject make that point plain:

"The giving of Christian Science treatment for a fee for the cure of disease is practicing medicine within the meaning of the statutes regulating such practice in this state.

"The statute making it a misdemeanor to give such treatment for a fee is not an interference with the rights of conscience and of worship conserved by Section 7 of the bill of rights, and is not on that ground unconstitutional.

"Legislation prohibiting any one from treating a disease for a fee excepting such persons as have prescribed qualifications, is a valid exercise of the police power of the state and *is constitutional.*

"The act regulating the practice of medicine in this state exacts reasonable qualifications and excludes no one possessing them and *it is not void as discriminating against Christian Scientists* in that it prescribes that any one possessing certain qualifications may practice ostheopathy, and *does not make special provision for those who wish to practice Christian Science."* *State of Ohio* v. *Marble,* 72 O. S., page 21.

"That the practice of medicine may be regulated by legislation has been decided in every court in which the question has arisen. In the leading case. *Dent* v. *W. Va.,* 129 U. S., 114-122, Mr. Justice Fields says: 'The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure, or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud. As one means to this end it has been the practice of different states from time immemorial, to exact in many pursuits a certain degree of skill and learning,' " etc. *State of Ohio* v. *Marble,* 72 O. S., page 34.

"That the Legislature in its wisdom, might prescribe a uniform examination, we do not doubt, and that it may recognize

one school without recognizing all, is also true, if the recognition be in the exercise of proper classification and for the public welfare, and not with a view to create a monopoly in the schools recognized or a discrimination against other schools. *Parks* v. *State*, 159 Ind., 211; *State, ex rel Kellog*, v. *Currens et al*, 111 Wis., 431; *Scholle* v. *State*, 90 Md., 729.'' *State of Ohio* v. *Marble*, 72 O. S., page 38.

''The power conferred upon the state board of medical registration and examination is administrative in character, and not judicial within the meaning of Section 1 of Article IV of the Constitution of the state.

''It is competent for the state, under its power to provide for the welfare of its people, to establish needful regulations and impose reasonable conditions calculated to insure proper qualifications, both with respect to learning and moral integrity, of persons desiring to engage in the practice of medicine in the state, and require compliances therewith by such persons before they shall be permitted to practice within the state. The regulations adopted by this statute are of that character, and do not infringe upon the privileges and immunites guaranteed by Section 2, of Article IV, of the Federal Constitution to citizens in the several states, *nor abridge those secured to citizens of the United States by the fourteenth article of amendment of that Constitution.*'' *State* v. *Mosier*, 78 Ia., 321.

''The right to labor and enjoy the rewards thereof is a natural right which may not be unreasonably interfered with by legislation where, however, the pursuit concerns in a direct manner, the public health and welfare and is of such a character as to require a special course of study or training, or experience to qualify one to pursue such occupation with safety to the public interest, it is within the competency of the General Assembly to enact reasonable regulations to protect the public against evils which may result from incapacity and ignorance.'' *State* v. *Gardner*, 58 O. S., 599.

In the opinion in the Gardner case, the court say:
''The acts referred to fall within the exercise of the police power of the state, that power, conceded to reside in the people's representatives, which is rightfully exercised by the regulation of the use of private property, or so restraining personal action, as to secure, or tend to the comfort, health or protection of the community. *Further examples of its exercise are found in the laws which require study and examination before one is per-*

*mitted to practice law or medicine or engage in the occupation of a dentist or a pharmacist."* State v. *Gardner*, 58 O. S., 606.

In the above case it was held· that the ·business of plumbing, while not to be ranked with the professions as to degree of learning, is one which is so nearly related to the public health that it may with propriety be regulated by law, and reasonable regulations tending to protect the public against the dangers of careless and inefficient work and appropriate to that end do not infringe any constitutional right of the citizen pursuing such calling.

In the case of *State of Ohio* v. *Liffring,* it was held:

"The system of rubbing and kneading the body, commonly known as osteopathy, is not an 'agency' 'within the meaning of the act of February 27th, 1896, ':to regulate the practice of medicine' (92 O. L., 44), ·which forbids the prescribing of any drug or medicine or other agency for the treatment of disease by a person who has not obtained from the board of medical registration and examination a certificate of qualifications." *State* v. *Liffring,* 61 O. S., 39.

In the case of *State* v. *Cravett,* it was held that:

"The system of rubbing or kneading the body, commonly known as osteopathy, is comprehended within the practice of medicines defined by Section 4403*f* of the Revised Statutes as amended by the act of April 14th, 1900 (94 O. L., 200)." *State* v. *Cravett,* 65 O. S., 289.

.In distinguishing the two cases, the court said that in the Liffring case, as the statute then stood. by applying the doctrine *noscitur a sociis,* the application of which doctrine was called for by the statute as it then stood, the rubbing or kneading process, commonly called osteopathy, was not included within the terms of the statute, while in the Cravett case the amendment .to the statute, which had been made since the former case, made the act so comprehensive that the above doctrine could be of no aid in construing the statute, and that the process of kneading and rubbing the body, commonly called osteopathy, was included within the statute as amended.   The court in the Cravett case, however, found the act of April 14, 1900 (94 O. L., page 200), to

be defective in that it discriminated against osteopaths by requiring them to hold diplomas from a college which requires four years of study.   At the next session of the Legislature the act was again amended (95 O. L., 212) so as to rid the statute of this vice by eliminating the four year requirement for osteopaths.

About forty objections to the form of the affidavit in one case and the indictment in the other case were presented   in the lower courts and overruled.   They have been presented for review here, but we find that in both cases the accused were informed of the charges against them with that definiteness and certainty that the law requires.

In the Brown case it is further contended that the court erred in refusing to permit him to testify that he did not practice medicine on the day in question.

There was no error in this.   The question simply called for Brown's conclusions as to what he did and his own characterization of his own acts.   His acts were before the jury, and it was for the jury to determine whether those acts amounted to practicing medicine contrary to law.

In the Triplett case certain rulings on evidence are complained of.

The trial judge refused to allow the introduction of any evidence to show what the Weltmer School of Suggestive Therapeutics was, and likewise what magnetic healing consisted of, for the purpose, as claimed, of showing that the advertising matter set up in the information could not reasonably have represented plaintiff in error to be engaged in the practice of medicine or surgery.

The trial judge also refused to permit the accused to show by other witnesses than himself that his practice, whatever it was, was not the practice of medicine or surgery.

This is practically the same point that was made in the Brown case, and nothing further need be said about it.   It was not for the witness, but for the jury, to determine the character of his practice.

Both of these questions, however, have been adjudicated by the Supreme Court.

From the record of the unreported case of *State* v. *Hughes*, 83 O. S., 445, it appears that the prosecuting attorney excepted to the admission of evidence on behalf of the defendant in the following particulars:

"Fifth.    Testimony of the defendant concerning his course of study and preparation for his profession as healer.

"Sixth.    Testimony of the defendant as to the nature of his treatments. That the same did not consist of administering drugs or performing surgical operations."

The judgment of the Supreme Court is: "Exceptions sustained."

This is sufficient to show that the Supreme Court considered that the trial judge in the Hughes case erred in admitting evidence that was ruled out in both the Brown and Triplett cases.

The objection to the reading of the coroner's minutes of what Triplett said at the inquest is not well taken. The record shows that counsel for the accused consented to the reading thereof.

The charge of the court in the Triplett case is brought to our attention. The complaint is that it divided the offense charged in the information in such a manner as to lead the jury to believe that the violation of the statute could be committed in any one of three ways.

On this subject the charge is as follows:

"I further charge you as a matter of law, that it constitutes practicing medicine or surgery in the state of Ohio to do any or all of the following acts or things, before having obtained a license or certificate from the state medical board of Ohio, to-wit:

"(1)    To use the words or letters 'Dr.', 'Doctor', 'Professor', 'M.D.' 'M.b.' or any other title in connection with one's name which in any way represents one as engaged in the practice of medicine or surgery in any of its branches.

"(2)    To examine or diagnose for a fee or compensation of any kind.

"(3)    To prescribe, advise, recommend, administer or dispense for a fee or compensation of any kind direct or indirect a drug or medicine, appliance, application, operation or treatment of whatever nature for the cure or relief of a wound, fracture, or bodily injury, infirmity or disease. And if you find beyond a reasonable doubt, as I shall define that term to you, that the defendant on or about the 21st day of August, 1910, or on or about

the 22d day of September, 1910, did any one or all of the matters and things which constitute the practice of medicine, as I have defined it to you, then you should find the defendant guilty.''

This charge was correct.                                    .

A statute often makes punishable the doing of one thing, or another, sometimes specifying a considerable number of things. Then by proper and ordinary construction a person, who, in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore, an indictment on such a statute may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction "and" where the statute has "or," and it will not be double, and it will be established at the trial by proof of any one of them. *Bishop's New Criminal Procedure,* Volume 1, Section 436.

We find no error in the record of these judgments and they are affirmed.