STATE OF IOWA, appellee, v. JAMES F. PAUL, appellant.

No. 47858.

(Reported in 48 N.W.2d 309)

854

JUNE 5, 1951.

Roy L. Pell and Joe B. Tye, both of Marshalltown, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and E. W. Adams, County Attorney, for appellee.

Mantz, J.—By information filed in the Municipal Court of the city of Marshalltown, Marshall County, Iowa, defendant was accused of the crime of failing to yield the right of way at a street intersection in said city. He entered a plea of not guilty. Upon trial he was convicted and a fine was imposed. He has appealed to this court.

On November 15, 1950, the State of Iowa filed an amended information in the Municipal Court of Marshalltown, Iowa, against the defendant, James F. Paul, which information reads as follows:

"The defendant, James F. Paul, is accused of the crime of failing to yield right of way to pedestrian committed as follows: For that the defendant on the 1st day of November, 1950, in the County of Marshall, State of Iowa, did fail to yield the right of way to a pedestrian, John Mullen, who was proceeding north across Main Street at the intersection of Center Street, in Marshalltown, Iowa, within a marked or unmarked crosswalk, when the traffic-control signal facing said pedestrian was green, in violation of section 321.257(1), Code of Iowa (1950)."

To this information he pleaded not guilty. He was tried and convicted and was sentenced to pay a fine of $25, in default of which he was to be confined in jail for a period of seven days.

As grounds for reversal defendant claims the trial court erred in three particulars:

(1) In failing to hold, as a matter of law, that a failure to yield the right of way to a pedestrian was not a criminal offense.

(2) In instructing the jury that it was immaterial whether the defendant's car hit the pedestrian or whether the pedestrian walked into the vehicle.

(3) In failing to sustain the motion for a directed verdict made by defendant at the close of the testimony.

There is little dispute in the facts. The fact that Mr. Mullen, the pedestrian, was crossing on the east side of the intersection of Main and Center Streets of Marshalltown, Iowa, is not in dispute. The defendant, driving his automobile, came from the north, made a left-hand turn into Main Street and while making that turn collided with Mr. Mullen who was then proceeding north-

ward and on the east side of Center Street. The defendant claimed that Mr. Mullen walked into the side of his vehicle, while the State claimed that the vehicle struck him, throwing him up in the air. When the vehicle stopped Mr. Mullen was stretched out on the pavement near the front of the car. At that time there was an electric-control device at said intersection, and it was operating and when Mr. Mullen started north he was facing the green light.

I. Defendant's first claim is that the failure to yield the right of way at an intersection is not a criminal offense. In support of this claim he cites a number of Iowa cases: State v. Brighi, 232 Iowa 1087, 7 N.W.2d 9, State v. Kellison, 233 Iowa 1274, 11 N.W.2d 371, and State v. Williams, 238 Iowa 838, 28 N.W.2d 514.

We think the cases cited do not apply to the present situation. In order to show the difference between the statute involved in the instant case we will set out pertinent parts thereof and follow with the statute under which State v. Brighi, supra, was decided.

The statute involved in the instant case is section 321.257 (a part of chapter 321, Code of 1946). Said section is designated "traffic-control signal legend" and states:

"Whenever traffic is controlled by traffic-control signals exhibiting the words 'Go', 'Caution' or 'Stop' or exhibiting different colored lights successively one at a time the following colors shall be used and said terms and lights shall indicate as follows:

"1. Green alone or 'Go'.

"Vehicular traffic * * * may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited.

"Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk."

Attention is called to the fact that the case of State v. Brighi, supra, involved an entirely different statute from the part of 321.257 above set out. That case involved the construction of

chapter 175, Acts of the Forty-ninth General Assembly, which is as follows:

"Section 1. Section five thousand twenty-six and one one hundredth (5026.01), code, 1939, is hereby repealed and the following enacted in lieu thereof: 'Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way.'

"The foregoing rule is modified at through highways and otherwise as hereinafter stated in this chapter."

In the case of State v. Brighi, supra, the court expressly held that chapter 175, Acts of the Forty-ninth General Assembly, could not be construed as a criminal statute and dismissed the charge against Brighi of failing to yield the right of way at an intersection. That statute and the one invoked in the instant case are different. In the instant case a pedestrian lawfully crossing an intersection has the right of way over vehicular traffic. If both are there properly the pedestrian has the right of way—the vehicle must yield and the failure of its driver to do so is declared a misdemeanor.

The factual situation between the instant case and the Brighi case is different. In the Brighi case two vehicles collided at an intersection and a fatal accident resulted. In the instant case the evidence shows that a traffic-control system was installed and was operating. It showed the various lights to advise vehicles and pedestrians as to the time to proceed. The evidence shows Mr. Mullen was one of a jury group proceeding from an eating place to the courthouse. Mr. Mullen was ahead of the group and the evidence shows without dispute that when he started across the intersection he was facing the green traffic light. He was some distance into the intersection when defendant came from the north and made a left-hand turn and in so doing Mr. Mullen was struck. Defendant claims that he did not hit Mr. Mullen, but that the latter ran into the side of his car. As a witness he described the progress of his car. He said that he saw the jury group. He said, "I didn't see Mr. Mullen until he walked into my car." Mr. Mullen was thrown into the air and landed on the pavement. A

number of the jurors just to the rear of Mr. Mullen testified that as he proceeded the light was green, and one stated that the car struck Mr. Mullen and threw him up in the air. Mr. Mullen being lawfully within the intersection was a "pedestrian" within the terms of section 321.257 above-quoted; he had the right of way and it was the duty of defendant in driving his car to have yielded such right. His failure to do so was a violation of said statute. Section 321.482 of said chapter 321 (Motor Vehicles and Law of Road) declares that it is a misdemeanor for any person to do any act forbidden or to fail to perform any act required by any of the provisions of the chapter and that anyone convicted of a misdemeanor for violation of any of its provisions where no other penalty is provided shall be punished by a fine of not more than $100 and by imprisonment for not more than thirty days.

Taking the prohibition as set forth in section 321.257 in connection with the provisions of section 321.482 there can be no doubt that a violation of the former makes the offender subject to the penal provisions of the latter. The issue was passed upon by the jury and its verdict is controlling as to the facts. No such situation existed in the case of State v. Brighi, supra. Chapter 175, Acts of the Forty-ninth General Assembly, as above set forth, did not contain the prohibition as set forth in section 321.482. This court held that to make said chapter 175 a criminal statute it would be necessary to depend upon an implication to that effect—something not to be indulged in criminal statutes. In the Brighi case the deficiencies in that respect of the statute under which the defendant was charged were clearly pointed out. This court (at page 1090 of 232 Iowa, page 10 of 7 N.W.2d) in discussing the statute involved in that case used the following language:

"Accordingly, by its very terms, the statute does not purport to state the only rule for right of way at an intersection." The court says at page 1091: "As above stated, statutes creating criminal offenses must be strictly construed. The legislature has no power to create offenses by implication. 'There can be no constructive offenses.' Here, section 5036.01 makes it a misdemeanor for one 'to do any act forbidden or to fail to perform any act required' by the chapter on the law of the road. But, when we

undertake to apply that section to chapter 175, Acts of the Forty-ninth General Assembly, we find that said chapter 175 does not expressly forbid any act. And only by implication does it require one."

The statute involved in the instant case fully meets the strict requirements laid down in the Brighi case. The rule is clear, definite and precise—nothing is left to implication. Consequently, we hold that the language of the Brighi case does not apply to the record of the instant case. The same is true of the other cases cited by defendant which reaffirm the holding of that case so far as applied to the claimed criminal provisions thereof. See State v. Wilson, 222 Iowa 572, 269 N.W. 205. We hold there is no error in the trial court's holding that section 321.257 is a criminal statute.

II. The next error urged is that the court erred in giving the jury instruction No. 7, especially that part wherein it is stated, "If the defendant operating such a vehicle failed to yield said pedestrian the right of way it is immaterial whether defendant's vehicle hit the pedestrian or whether the pedestrian walked into the vehicle."

Defendant claims that the part above-quoted is erroneous and that when considered with other instructions given it had the effect of directing a verdict of guilty.

The part quoted is to be construed along with the other instructions. Therein the rights of a pedestrian at intersections are clearly set forth. Defendant's claim is that the pedestrian walked into his car. There was positive evidence from one witness that the car hit the pedestrian. It is his theory that the pedestrian was guilty of contributory negligence. Under our holdings and the statute such would not excuse the criminal act here charged. State v. Wilson, supra; State v. Moore, 129 Iowa 514, 106 N.W. 16; State v. Thomlinson, 209 Iowa 555, 228 N.W. 80; State v. Graff, 228 Iowa 159, 290 N.W. 97; State v. Williams, supra.

In the instant case, Mr. Mullen, the pedestrian, was lawfully and rightfully in the intersection when he was struck. He waited for the green signal light and then went out into the intersection. When we consider the speed of a vehicle and that of a person on

860

foot at intersections it is not difficult to understand the purpose of the statutory enactment (section 321.257). Without its protection the pedestrian at crossings would be under a tremendous handicap. Under such a situation the pedestrian would proceed on a hazardous journey and would be required to dodge and side-step to avoid being struck by a rapidly moving vehicle. To construe the statute as claimed by defendant would deprive a pedestrian of needed protection. We can hardly conceive that the legislature had any such purpose in view when that statute was enacted.

We hold that the giving of said instruction was not error.

III. The third and final error complained of is that the court erred in not directing a verdict for defendant at the close of the testimony. There is no merit to this claim of error.

Boiled down, defendant claims that the pedestrian was guilty of contributory negligence in that he walked into defendant's vehicle and that at the time of the accident defendant was proceeding with care and caution and did not intend to run into the pedestrian. Even if these matters were material, still there was a jury question. The jury found that the defendant violated the statute. We hold that he had a fair trial and the case is affirmed. —Affirmed.

All JUSTICES concur.